## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

OTIS SIMS, III

   Plaintiff,

v.             CV 09-PT-154-E

GREGORY WALKER

   Defendant.

### MEMORANDUM OPINION

This cause comes on to be heard on the Defendant Gregory Walker's Motion for

Summary Judgment filed on September 21, 2009.

### Summary Judgment Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those

portions of [the evidence] which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this

burden by presenting evidence showing that there is no genuine dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support of some element of

its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  In

evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party.  *Id.* at 251 (*quoting Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

Facts

The facts of this case which might be considered and relied upon by a reasonable jury are substantially provided by video and audio tapes and stipulations of the parties.  This court will

not repeat the obvious.  These facts closely resemble the facts in *Scott v. Harris*, 550 U.S. 372 (2007).

Not only did the plaintiff avoid the reasonable efforts of the law enforcement officers to bring his reckless and severely dangerous conduct to a halt initially, he evaded them even after they had stopped him the first time, and resumed his dangerous journey.  Also see the affidavits of plaintiff and Walker.

### *Timothy Scott v. Harris*

The following quotes from *Scott v Harris* are controlling:

> We consider whether a law enforcement official can, consistent with the Fourth Amendment, attempt to stop a fleeing motorist from continuing his public-endangering flight by ramming the motorist's car from behind. *Put another way: Can an officer take actions that place a fleeing motorist at risk of serious injury or death in order to stop the motorist's flight from endangering the lives of innocent bystanders?* (Emphasis added).  *Id.* at 374.
>
> . . . . .
>
> Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Id.* at 376.
>
> . . . . .
>
> Further, "we repeatedly have stressed the importance of resolving immunity questions *at the earliest possible stage in litigation."* (Emphasis added).  *Id.* at 376.
>
> . . . . .
>
> There is, however, an added wrinkle in this case: existence in the record of a videotape capturing the events in question. There are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened. *Id*. at 378.

3

. . . . .

Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening **1776 sort, *placing police officers and innocent bystanders alike* at great risk of serious injury. (Emphasis added). *Id*. at 380.

. . . . .

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id*. at 380.

. . . . .

That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied *381 on such visible fiction; it should have viewed the facts in the light depicted by the videotape. *Id*. at 380-81.

. . . . .

At the summary judgment stage, however, once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, see Part III-A, supra, the reasonableness of Scott's actions-or, in Justice STEVENS' parlance, "[w]hether [respondent's] actions have risen to a level warranting deadly force," post, at 1784-is a pure question of law. *Id*. at 381.

. . . . .

But in this case, unlike in Garner, it was respondent's flight itself (by means of a speeding automobile) that posed the threat of "serious physical harm ... to others." Ibid. *Id*. at 382.

. . . . .

Whether or not Scott's Actions constituted application of 'deadly force,' all that matters is whether Scott's actions were reasonable." *Id.* at 383.

. . . . .

In determining the reasonableness of the manner in which a seizure is effected, "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Scott defends his actions by pointing to the paramount governmental interest in ensuring public safety, and respondent nowhere suggests this was not the purpose motivating Scott's behavior. Thus, in judging whether Scott's actions were reasonable, we must consider the risk of bodily harm that Scott's actions posed to respondent in light of the threat to the public that Scott was trying to eliminate. Although there is no obvious way to quantify *384 the risks on either side, it is clear from the videotape that respondent posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase.  *Id*. at 383-84.

. . . . .

So how does a court go about weighing the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger possibility of injuring or killing  a single person? We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability.  It was respondent, after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that Scott confronted. Multiple police cars, with blue lights flashing and sirens blaring, had been chasing respondent for nearly 10 miles, but he ignored their warning to stop. By contrast, those who might have been harmed had Scott not taken the action he did were entirely innocent. We have little difficulty in concluding it was reasonable for Scott to take the action that he did.  *Id*. at 384.

. . . . .

Second, we are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that

they put other people's lives in danger.  *Id*. at 385.

. . . . .

A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.  *Id*. at 386.[1]

## Final Conclusion

The court concludes that the law had not been clearly established that a police officer who shoots a firearm at a vehicle driven by a fleeing motorist in order to discontinue his "public-endangering flight" violates the Fourth Amendment.  To the contrary, *Scott v. Harris* indicates that an officer can "take actions that place a fleeing motorist at risk of serious injury or death in order to stop a motorist's flight from endangering the lives of innocent bystanders."  Like in *Scott v. Harris*, this flight is one which "resembles a Hollywood-style car chase of the most frightening sort placing officers and innocent bystanders alike at great risk of serious injury." See other quotes from *Scott v. Harris* above.

The court concludes that Walker is entitled to qualified immunity.   The motion will be granted.[2]

_____

[1]In addition to the *Scott* case holdings, the court notes that there is no evidence that a Walker shot wounded Sims. Further, there is no direct evidence which disputes Walker's statement that he shot at the tires.  The court does not rely on these observations in concluding that Walker is entitled to qualified immunity.

[2]*Also see Brosseau v. Haugen*, 543 U.S. 194 (2004).  After *Scott v. Harris* was decided, the Supreme Court decided *Pearson v. Callahan*, ___ U.S. ___ (2009).  This court concludes, without directly deciding the constitutional issue other than as indicated by *Scott*, that Walker's conduct was that of a reasonable police officer under the circumstances, even if there were evidence that he caused an injury. See *O'Rourke v. Hayes*, 378 F.3d 1201 (11th Cir. 2004); *Lee v. Ferraro*, 284 F.3d (11th Cir. 2002); *Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993); and *Smith v. Freeland*, 954 F.2d 343 (5th Cir. 1992).  Particularly, see *Smith*.

This the 10th day of November, 2009.


**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**